# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BILLY ROCHE,**

           **Plaintiff,**

      v.                                              Case No. 20-CV-556

**KILOLO KIJAKAZI,[1]**
**Acting Commissioner of the Social Security Administration,**

           **Defendant.**

## DECISION AND ORDER

**1. Introduction**

Alleging that he has been disabled since March 3, 2014 (Tr. 280), plaintiff Billy Roche seeks disability insurance benefits and supplemental security income. After his application was denied initially (Tr. 51-74) and upon reconsideration (Tr. 75-104), a hearing was held before Administrative Law Judge (ALJ) Guila Parker on April 9, 2019 (Tr. 27-50). On May 6, 2019, the ALJ issued a written decision, concluding that Roche was not disabled. (Tr. 10-26.) After the Appeals Council denied Roche's request for review on

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

February 4, 2020 (Tr. 1-6), Roche filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 9), and the matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Roche had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15.) He was last insured on December 31, 2015. (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Roche has the following severe impairments: "fibromyalgia, obesity, degenerative disc disease of the cervical and lumbar spine." (Tr. 15.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or

impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Roche did not have an impairment of combination of impairments that meets or medically equals a listing.

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Roche has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is able to lift up to 5 pounds. The claimant is precluded from climbing ladders, ropes, and scaffolds. The claimant should not work at unprotected heights or around dangerous moving machinery. The claimant can frequently climb stairs, stoop, crouch, or crawl. The claimant can frequently reach overhead with the bilateral upper extremities. The claimant can work in a low stress job, defined as one that requires only occasional work-related decisions, involves only occasional changes in the work setting, and does not impose fast-paced production quotas. The claimant requires a sit/stand option such that he can work sitting 20-30 minutes and then standing 15 minutes.

(Tr. 17.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that "[t]he claimant is unable to perform any past relevant work." (Tr. 20.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 21.) Specifically, the ALJ identified the jobs of inspector, as set forth in the Dictionary of Occupational Titles (DOT) under number 669.687-014, sorter (DOT 521.687-086) and addresser (DOT 209.587-010). (Tr. 22.) Therefore, Roche was not disabled. (Tr. 22.)

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

**4.1. Treating Neurologist's Opinions**

An ALJ must consider the following factors when evaluating the medical opinion from a medical source: supportability; consistency; relationship with the claimant, including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relations; specialization; and any other factors that tend to support the medical opinion, including evidence that the medical source is familiar with other medical evidence or has an understanding of social security policies. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors are the supportability and consistency of the opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Although the ALJ must consider all of these factors, she need

not discuss each factor in her opinion; the ALJ need discuss only the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Dr. John Broderick, a neurologist, treated Roche for his fibromyalgia. He submitted a "Fibromyalgia Syndrome Medical Source Statement" (Tr. 569-73) wherein he opined that Roche's limitations precluded all work. For example, he stated that Roche would be absent more than four days per month and would need to take more than 10 unscheduled breaks every day. (Tr. 571-72.) He also opined that Roche was not able to maintain attention and concentration for at least two hours, complete a normal workday, or deal with the stresses of skilled or semiskilled work. (Tr. 573.)

The ALJ concluded that Broderick's opinions were not persuasive, in part because of "inconsistencies within his own notes." (Tr. 20.) As an example, the ALJ noted that "Broderick opined that the (sic) he did not see how the claimant would be able to work in a competitive work environment or even in a sedentary setting. However, a few sentences prior, he just stated that the claimant was stable for the most part." (Tr. 20 (citations omitted).) He also found that "the objective evidence is insufficient to support the degree of limitation on sitting, standing, or walking less than 2 hours." (Tr. 20.) Broderick's "examinations are abbreviated, with no findings at all concerning the claimant's low back, his muscle strength or tone, or spinal range of motion." (Tr. 20.) The examination notes indicated that Roche was not in distress and did not indicate any

discomfort with sitting or standing. (Tr. 20.) Broderick noted that Roche obtained good pain relief with dry needling and physical therapy. (Tr. 20.)

The ALJ found that the physical limitations identified by Broderick, including manipulative limitations, were not supported by objective evidence; the musculoskeletal findings were normal and there were no indications that Roche had problems handling. (Tr. 20.) Nor was there evidence that Roche would require excessive breaks or be absent from work an excessive number of days per month. (Tr. 20.) The ALJ noted that Roche "has been described as alert, oriented, in no apparent distress and no excessive no-shows for appointments." (Tr. 20.)

Roche offers a multi-faceted criticism of the ALJ's conclusion. He begins by arguing that "stable" symptoms are not inconsistent with a disabling impairment. (ECF No. 19 at 8.) The relief that Roche enjoyed from physical therapy and dry needling was temporary and would not permit sustained fulltime work. (ECF No. 19 at 9.) He also argues that there is physical evidence that supports the exertional limitations that Broderick found. (ECF No. 19 at 9-11.) Because his primary complaint is fibromyalgia, abnormal findings regarding lumbar spine, muscle strength and tone, and range of motion would not be expected. (ECF No. 19 at 11.) Roche further asserts that, contrary to the ALJ's finding, there is evidence supporting Broderick's limits on the use of his arms. (ECF No. 19 at 11-12.) Finally, Roche argues that Broderick's finding regarding Roche's

likely absenteeism is supported by evidence of Roche's variable functioning. (ECF No. 19 at 12-13.)

The fact that a provider characterizes a patient's symptoms as stable, or even improving, generally does not suggest an ability to work or an absence of an impairment. *See Ivy-Covington v. Saul*, No. 19-CV-213, 2020 U.S. Dist. LEXIS 39844, at *10-11 (E.D. Wis. Mar. 9, 2020) (quoting *Herron v. Colvin*, No. 14-CV-56, 2014 U.S. Dist. LEXIS 161947, at *18 (E.D. Wis. Nov. 19, 2014). In fact, to say symptoms are "stable" usually suggests nothing about the severity of the impairment.

But Broderick did not say only that Roche's symptoms were "stable." Broderick's whole statement was, "Overall, things are for the most part stable, we are not going to make any adjustments." (Tr. 494.) Read in context, it is reasonable to understand why the ALJ apparently interpreted "stable" to suggest that Roche's impairments were not as debilitating as Broderick later reported. After all, absent satisfaction with Roche's current condition, why wouldn't a provider adjust treatment?

This reading of "stable" might not be the conclusion the court would have reached, but, applying the deference that the court must to the ALJ's conclusions, the court cannot say that this statement is reason for remand; the ALJ reasonably noted that Broderick's notes seemed internally inconsistent.

The ALJ also reasonably concluded that "the objective evidence is insufficient to support the degree of limitation on sitting, standing, or walking less than 2 hours." (Tr.

20.) Her accurate observation that "[m]any of Dr. Broderick's examinations are abbreviated, with no findings at all concerning the claimant's low back, his muscle strength or tone, or spinal range of motion" is a reasonable factor in assessing the persuasiveness of Dr. Broderick's opinions. The probative value of this observation may be debated given that Roche's complaints were not associated with his lower back, but it does not support a finding that the ALJ erred. That there was evidence "that would tend to support Dr. Broderick's exertional limitations, concerning limited sitting and standing tolerance (i.e. inability to sit or stand/walk for an eight-hour workday) and upper extremity limitations" (ECF No. 19 at 9) does not mean that the ALJ was required to accept Broderick's opinion.

And, in fact, the ALJ did not wholly discount Broderick's conclusions. In limiting Roche to frequent overhead reaching, she found that he was limited in using his arms. (Tr. 17.) Finding that Roche has postural limitations, the ALJ limited him to jobs with the option to sit or stand with up to 30 minutes sitting and 15 minutes standing. The ALJ merely found unpersuasive the *degree* of limitations found by Broderick.

Ultimately, it is not the court's role to nit-pick the ALJ's decision to determine if every reason given independently supports finding a treating source's opinion to be unpersuasive. The court's review is deferential and considers the ALJ's overall conclusion as to the persuasiveness of an opinion. The ALJ provided reasons sufficient for her

9
Case 2:20-cv-00556-WED   Filed 07/19/21   Page 9 of 17   Document 26

conclusion that Broderick's opinion was not persuasive. Therefore, given the deference the court must afford the ALJ's decision, remand is not appropriate on this basis.

**4.2. Symptom Severity**

"In determining whether an individual is disabled, [the ALJ must] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p. The ALJ must assess the individual's symptoms—*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)"—using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." SSR 16-3p. In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. Although the court is not assessing the claimant's character or truthfulness, SSR 16-3p, this evaluation was previously characterized as a "credibility" assessment, *see* SSR 96-7p, and that language persists in the caselaw. *See, e.g.*, *Hinds v. Saul*, 799 F. App'x 396, 400 (7th Cir. 2020); *Brian J. v. Saul*, 438 F. Supp. 3d 903, 908 (N.D. Ill. 2020). The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).

The ALJ stated,

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 18.)

Although often criticized, *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014), the use of this and similar boilerplate is not error by itself. "The ALJ's use of this boilerplate is not problematic provided the ALJ actually explains the reasons for his conclusion." *Steadman v. Saul*, No. 20-CV-190, 2021 U.S. Dist. LEXIS 53169, at *7-8 (E.D. Wis. Mar. 22, 2021) (citing *Taylor v. Saul*, No. 19-CV-359, 2020 U.S. Dist. LEXIS 70731, at *7 (E.D. Wis. Apr. 22, 2020)). "This requires that the ALJ not merely recite the evidence but connect the evidence to his conclusions." *Id*.

The ALJ noted: "many musculoskeletal examinations showed that the claimant had a normal gait, range of motion, normal strength, and no tenderness or swelling"; "the claimant was mostly stable with exception of some difficulty in the lower extremity"; "his fibromyalgia was stable"; "[m]any physical examination findings show the claimant's neck is supple, the claimant is pleasant and in no distress"; "[t]he claimant has been noted to display a degree of self-limiting and somatization behavior"; "[t]he claimant also reported significant relief with dry needling"; and "[h]e has tried shoveling snow more than once". (Tr. 19.)

Roche argues that he is able to function in exams only because he limits his activities; this does not reflect how he would function in fulltime work. (ECF No. 19 at 16.) He acknowledges his self-limiting behavior, but he notes that this is how he prevents flare-ups of his symptoms. (ECF No. 19 at 16.) And although he twice shoveled snow, he did so on his good days. (ECF No. 19 at 16-17.)

In assessing the severity of a claimant's symptoms under SSR 16-3p, the ALJ is not directly assessing whether the claimant is capable of sustained full-time work. Rather, the ALJ is assessing whether the claimant's symptoms are as severe as he reports. Thus, the ALJ was not saying, for example, "Roche can shovel snow; therefore, he can work fulltime." Instead, the ALJ was saying, "Roche can shovel snow; therefore, I conclude that his symptoms are not as severe as he reports."

It was in conjunction with her RFC determination that the ALJ ultimately concluded what Roche's abilities were for sustained fulltime work. The RFC determination was based on all relevant evidence, including but not limited to the severity of Roche's symptoms.

The ALJ complied with her obligation to provide specific reasons, supported by the record, for discounting the reported severity of Roche's symptoms. Because Roche has failed to show that the ALJ's determination was patently wrong, the court must defer to it. *Apke v. Saul*, 817 F. App'x 252, 258 (7th Cir. 2020).

**4.3. Residual Functional Capacity – Variable Functioning and Use of Arms**

Roche notes that there is evidence that he periodically suffers flare-ups of his fibromyalgia and aggravation of his symptoms. (ECF No. 19 at 18-19.) He argues that the ALJ did not adequately account for his variable functioning in her RFC determination. (ECF No. 19 at 19.)

The Commissioner responds that the ALJ was not required to walk through every alleged aspect of Roche's impairments. And, in any event, it is unclear what Roche means by "variable functioning," and Roche has not demonstrated that it was not adequately accounted for in the ALJ's RFC finding. (ECF No. 24 at 14-15.)

The ALJ noted that Roche "testified to flare-ups in his shoulders, legs, and neck, as well as pain in his arms and hands due to fibromyalgia. These flare-ups come 4-5 times a week, lasting from 1 hour up to a whole day. The flare-ups make him feel like his extremities are on fire.… Stress sand [sic] the cold trigger his fibromyalgia flare-ups." (Tr. 17-18.) Given this, no basis exists for Roche's arguments that the ALJ erred by overlooking evidence of Roche's variable functioning. The ALJ, however, concluded that Roche's symptoms were not as severe as he reported. Because the ALJ's assessment of Roche's symptoms was consistent with SSR 16-3p, the court cannot upset the ALJ's conclusion. Accordingly, the ALJ did not err in assessing Roche's alleged variable functioning.

Similarly, contrary to Roche's argument (ECF No. 19 at 19-20), the ALJ explicitly accounted for evidence regarding Roche's use of his upper extremities. The ALJ limited

Roche to work with no more than frequent overhead reaching. (Tr. 20.) Having said that, there is evidence that Roche's limitations affected more than overhead reaching. Roche testified that he experiences numbness and tingling in his hands that affect his ability to do basic tasks, like trying to cut with a knife, tie his shoes, get dressed, or use a smartphone. (Tr. 42-44.) Broderick opined that Roche would be limited to only occasional use of his hands to grasp, turn, or twist objects or use his fingers for fine manipulations. (Tr. 428.) Although the ALJ mentioned Broderick's finding in a general summary of the evidence (Tr. 20), she did not otherwise discuss it in connection with any limitations in Roche using his hands or fingers. The vocational expert testified that a limitation to only occasional handling and fingering would be work preclusive. (Tr. 48.)

However, the ALJ stated that she did not find Broderick's opinion persuasive and concluded that Roche's symptoms were not as severe as he alleged. The implication is that she rejected this evidence regarding Roche's use of his hands and fingers. Roche has not pointed to any other evidence that supports his claimed limitations regarding the use of his hands. He does not even point to medical records documenting such a complaint.

Against this backdrop, even if the court could say that the ALJ erred by not explicitly referring to Roche's claimed limitation in using his hands and fingers, the error was harmless. The ALJ having found Roche's self-reported limitations and Broderick's opinions unpersuasive the first time around, the court can predict with confidence that the ALJ is not now going to find them persuasive. Therefore, because it is clear that the

15
Case 2:20-cv-00556-WED   Filed 07/19/21   Page 15 of 17   Document 26

Roche to work with no more than frequent overhead reaching. (Tr. 20.) Having said that, there is evidence that Roche's limitations affected more than overhead reaching. Roche testified that he experiences numbness and tingling in his hands that affect his ability to do basic tasks, like trying to cut with a knife, tie his shoes, get dressed, or use a smartphone. (Tr. 42-44.) Broderick opined that Roche would be limited to only occasional use of his hands to grasp, turn, or twist objects or use his fingers for fine manipulations. (Tr. 428.) Although the ALJ mentioned Broderick's finding in a general summary of the evidence (Tr. 20), she did not otherwise discuss it in connection with any limitations in Roche using his hands or fingers. The vocational expert testified that a limitation to only occasional handling and fingering would be work preclusive. (Tr. 48.)

However, the ALJ stated that she did not find Broderick's opinion persuasive and concluded that Roche's symptoms were not as severe as he alleged. The implication is that she rejected this evidence regarding Roche's use of his hands and fingers. Roche has not pointed to any other evidence that supports his claimed limitations regarding the use of his hands. He does not even point to medical records documenting such a complaint.

Against this backdrop, even if the court could say that the ALJ erred by not explicitly referring to Roche's claimed limitation in using his hands and fingers, the error was harmless. The ALJ having found Roche's self-reported limitations and Broderick's opinions unpersuasive the first time around, the court can predict with confidence that the ALJ is not now going to find them persuasive. Therefore, because it is clear that the

ALJ will reach the same result if the court remanded for the ALJ to offer further explanation, the lack of explanation was harmless. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result").

5. **Conclusion**

The ALJ provided sufficient reasons for not finding Broderick's opinion persuasive and complied with SSR 16-3p in assessing the severity of Roche's symptoms. In discounting the severity of Roche's symptoms, the ALJ necessarily found that Roche's allegations regarding his variable functioning were not as severe as he alleged. And aside from Roche's own self-reports and the form that Broderick completed, there was no evidence that Roche was limited in the use of his hands and fingers. Because the ALJ reasonably found that Roche's self-reports and Broderick's opinions were not persuasive the ALJ did not err by failing to explicitly discuss these alleged limitations or to account for them in her RFC finding.

Consequently, given the deferential standard of review that the court must apply to the ALJ's decision, the court is required to affirm the ALJ's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**.

The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of July, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge